Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 N. Central Ave., 17th Floor
Glendale, California 91203
Tel: 323.962.3777
Fax: 323.962.3004
aharris@harrisandruble.com
pmohan@harrisandruble.com
Attorneys for Plaintiff
LERNA MAYS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LERNA MAYS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WAL-MART STORES, INC., a Delaware Corporation and DOE ONE through and including DOE ONE-HUNDRED,

Defendants.

Case No.: 2:18−cv−02318−AB-KK

*Assigned to Hon. André Birotte Jr.*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[CENTRAL DISTRICT LOCAL RULE 7-18]**

Date: October 5, 2018
Time: 10:00 a.m.
Place: Courtroom 7B
350 W. First Street
Los Angeles, CA 90012

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE** that, on October 5, 2018 at 10:00 a.m., in Courtroom 7B of the above-entitled Court located at 350 West First Street, Los Angeles, California 90012, the Honorable André Birotte presiding, Plaintiff will, and hereby does, move for reconsideration of the Court's August 22, 2018 Order denying Plaintiff's Motion for Class Certification. This motion is made pursuant to: (1) the Court's inherent power to reconsider and modify its interlocutory orders prior to entry of judgment, and (2) Central District Local Rule 7-18(c). Plaintiff respectfully requests that the Court reconsider its denial of certification of the Former Employee Class on the grounds that it did not consider material facts which establish that the proposed Class, as limited to include only those who received post-termination payments for non-discretionary MyShare Incentive Award bonuses and associated overtime (respectively coded on the wage statements as "MYSHARE INC[EN]T[IVE] and OVERTIME/ INC[EN]T[IVE]"), Jul. 8, 2018 Mohan Decl., Ex. 25 [ECF Doc. 47-4] at ECF. p. 18 (reflecting a deduction for a social security payment), meets the numerosity and commonality requirements for certification.

At oral argument, in response to this Court's tentative ruling, the undersigned requested at least certification of a part of the Former Employee Class, limited to those who received post-termination payments of MyShare Incentive Award bonus payments and the associated overtime. The legal claim that these payments are not wages is incorrect. From some 129,079 persons who were issued final paychecks during the period at issue, the unchallenged conclusion of Plaintiff's expert, Stephen Moses, that hundreds if not thousands of former workers received such post-termination bonus payments is a fact overlooked in this Court's analysis. This Motion follows the conference of counsel pursuant to L.R. 7-3, initiated by Plaintiff's counsel on August 29, 2018. The parties concluded their meet and confer efforts on August 30, 2018.

//
//
//

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, all pleadings and documents on file herein, and on such other and further evidence as may be presented at or before the hearing on this matter.

DATED: September 5, 2018

HARRIS & RUBLE

*/s/ Alan Harris*

Alan Harris
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. RELEVANT FACTS .......... 1
III. ARGUMENT .......... 9
A. An Order Denying Class Certification Is Subject To Reconsideration .......... 9
B. Numerosity Was Established For The Former Employee Class .......... 10
C. Commonality Was Established For The Former Employee Class .......... 11
IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

Page(s)

## Cases

Luviano v. Multi Cable, Inc., 2017 WL 3017195 (C.D. Cal. Jan. 3, 2017) .......... 11

Orantes –Hernandez v. Smith, 541 F. Supp. 351 (C.D. Cal. 1982) .......... 11

Peabody v. Time Warner Cable, Inc., 59 Cal. 4th 662 (2014) .......... 10, 11

Schachter v. Citigroup, Inc., 47 Cal. 4th 610 (2009) .......... 12

Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 24 Cal. App. 3d 35 (1972) .......... 12

## Statutes

Cal. Lab. Code § 201 .......... 8, 9

Cal. Lab. Code § 203 .......... 1

## Rules

Federal Rule of Civil Procedure 54(b) .......... 9

## I. INTRODUCTION

Plaintiff Lerna Mays ("Mays") seeks reconsideration and reversal of the Court's August 22, 2018 Order (the "Order") denying class certification as to Plaintiff's claim under California Labor Code section 203, arising due to tardy final wages paid post-termination to former employees. Plaintiff respectfully submits that the Court, in reaching its decision to deny Plaintiff's Motion for Certification of the Former Employee Class, failed to consider material facts regarding Defendant's practices concerning the payment of non-discretionary MyShare Incentive Award Bonus payments and related overtime wages. Specifically, the Court failed to consider the fact that the Incentive Award and associated overtime payment paid to Plaintiff on or March 9, 2017 was, in fact, a payment of wages. Plaintiff also provided evidence in support of the Motion that showed that such Incentive Award payments were routinely provided to thousands of employees and that Defendant's practice was to make these payments to terminated employees on the regularly scheduled payday *after* termination rather than at the time of termination or a date prior to the regularly scheduled payday. In addition, the material facts show that, despite defense witness McChristian's claim that, "payments similar to those received by Plaintiff were *possible* . . . it was not routine," it is clear that she was not referring to the Incentive Award payments, which in fact were made regularly. Based on these material facts, there is no question but that this case fulfills the numerosity and commonality requirements for class certification.

The Court, therefore, should reconsider the Order and grant partial certification of the Former Employee Class, limiting it to those who received a post-termination Incentive Award and associated overtime wages, such as the payment received by Plaintiff on March 9, 2017.

## II. RELEVANT FACTS

In the Motion, Plaintiff sought certification of the following Former Employee Class:

> All Wal-Mart Stores, Inc. California workers who received one or more wage payments during the period from December 18, 2014 to the date on which this Motion may be decided whose employ by Defendant terminated on or after December 18, 2014, yet who were provided additional wages or vacation pay after their Statement of Final Wages was issued.

Jul. 8, 2018 Not. of Mot. For Class Cert. [ECF Doc. 43] at 2:19-24.  At oral argument, in response to this Court's tentative ruling, the undersigned requested at least certification of a part of the Former Employee Class, limited to those who received post-termination payments of MyShare Incentive Award bonus payments and the associated overtime. The Court denied certification of the Former Employee Class on the grounds that Plaintiff could not establish numerosity and commonality.

Plaintiff contends that Defendant routinely fails to timely pay all wages due to terminating employees.  On February 10, 2017, the date Plaintiff's employment was terminated, Plaintiff received an off-cycle "Statement of Final Pay" from Defendant. Plaintiff subsequently received two additional on-cycle wage statements, on February 23, 2017 and March 9, 2017.  These post-termination statements were each issued as part of the regularly scheduled, biweekly Thursday payroll run.  In other words, the payments were made on what would have been regularly scheduled paydays had Plaintiff remained employed by Defendant.

While Defendant claimed that the first tardy payment was not for earned wages and the individual inquiries would be required to ascertain the basis for such payments, it cannot be, and was not disputed that the March 9, 2017 payment to Plaintiff was for an earned Incentive Award and overtime wages, routine payments made each quarter to thousands of employees, hundreds of whom previously terminated their employ with Wal-Mart.  As stated in the Motion:

> In answer to an Interrogatory asking why Plaintiff received a $23.78 payment a month after her termination, Wal-Mart Stores, Inc. responded: "The payment of $23.78 reflects both a quarterly nondiscretionary incentive

> payment to Plaintiff and an adjustment to overtime pay to Plaintiff based on the incentive payment." Mohan Decl., Ex. 33, 19:26–20:8.

Jul. 8, 2018 Mot. [ECF Doc. 43] at 16:24–27.  In its Opposition, Defendant acknowledges the payment was for the Incentive Award, stating that:

> On March 9, 2017, Plaintiff received a check from Walmart for a MyShare incentive award.  (McChristian Decl., ¶ 18.)  The MyShare incentive award was for the financial quarter ending January 31, 2017 (*Id.*)

Jul. 30, 2018 Opp. [ECF Doc. 56] at 6:25–7:1.

In the Opposition, Defendant argued that Plaintiff did not receive the Incentive Award payment at the time of her termination because, "it had not yet been determined which stores and associates would be receiving awards at that time." Id. at 7:2–4.  Unlike the "true-up" payment made to Plaintiff on February 23, 2017, Defendant does not claim that this payment was an anomaly.  Defendant's Opposition stated that:

> Walmart's "MyShare Quarterly Incentive Plan" provides quarterly awards to Walmart associates, but only if both the store and associate qualify. The MyShare incentive award is expressly contingent: not every California store will earn it on a quarterly basis, nor will every associate at a store that qualified for the incentive receive an award.  The MyShare Plan provides that "awards will be issued within approximately 45 days after the end of each financial quarter" and "will be included in the regular rate of pay when calculating overtime for the incentive quarter."  **The MyShare incentive award appears on an associate's wage statement as "MyShare INCT" and a retroactive adjustment to prior overtime paid in that quarter shows up on the statement as "OVERTIME/INCT**." (McChristian Decl., ¶ 17.)

Jul. 30, 2018 Opp. [ECF Doc. 56] at n. 3 (emphasis in bold).

The Court found that Plaintiff did not establish numerosity with respect to the Former Employee Class. The Court's Order stated, with respect to the evidence of Plaintiff's expert, to which no objection was made:

> At the hearing, counsel argued that Defendants routinely paid nondiscretionary bonuses such as the March bonus payment Plaintiff received following her termination. Plaintiff's expert, Mr. Moses concluded that, based on his review of the bonuses *Plaintiff* received, that "defendant intentionally and routinely delayed the payment of bonuses, including the final bonus to Plaintiff and thousands of others . . . ." (Moses Decl. ¶ 21.) However the Court is not persuaded that Plaintiff provided sufficient evidence to support this conclusion. **Plaintiff fails to point to any information regarding the bonus criteria or how many employees qualified for a bonus in a given pay period, et cetera.** Without such information, the Court is unable to determine whether other employees likely received similar bonuses. Plaintiff's experience alone is insufficient to support this conclusion.

Order [ECF Doc. 61] at 8:8–18 (emphasis added).

Contrary to the Court's assertion above, Plaintiff did proffer detailed evidence beyond Plaintiff's experience, demonstrating that Incentive Awards were routinely provided to employees. For example, Exhibit 30 to the Mohan Decl. is a September 21, 2016 article, reporting that, "Wal-Mart Stores, Inc. (WMT.N) said it paid more than $201 million second-quarter bonuses to hourly store staff as 99 percent of its stores met targets for cleanliness, faster checkout and better service." Jul. 8, 2018 Mohan Decl., Ex. 30 [ECF Doc. 47-4], Bose, Nandita, "*Wal-Mart pays quarterly bonuses to more store employees*", Reuters Business News, 2016, at ECF p. 44. The article further reported that: "The world's largest retailer said 932,000 store employees received a quarterly cash bonus this year. This was a jump from 880,000 employees in the second quarter of fiscal 2016 and 687,000 workers in fiscal 2015." Id. at ECF p. 44. Defendant incorrectly

claimed in its Opposition that this article was not attached to the Mohan Declaration. This defense claims is plain error as the article was indeed filed as part of the record.[1] The article, specifying the number of workers who received the quarterly payment, addresses this Court's concern that Mays "fails to point to any information regarding the bonus criteria or how many employees qualified for a bonus in a given pay period."

Further, from the deposition of Todd Stokes, Defendant's Regional Human Resource Director, submitted in support of the Motion for Class Certification, the Court was provided pertinent information regarding the number of employees who received a MyShare Incentive. For instance, Stokes testified that 51,824 employees received a MyShare Incentive Award in the same period they were paid one or more meal premiums during the time period December 2, 2012 to September, 2017. Jul. 8, 2018 Mohan Decl., Ex. 35 (Stokes deposition) [ECF 47-6] at ECF. p. 89, p. 93:1–18. Also in evidence is the defense admission that 129,079 persons received a final paycheck during the period December 1, 2013 to June 21, 2018. Jul. 8, 2018 Mohan Decl., Ex. 36 at ECF Doc. 47-6 at ECF p. 96.

On August 16, 2018, the day before the hearing on Plaintiff's Motion for Class Certification, the plaintiff in Magadia v. Wal-Mart Associates, Inc., N.D. Cal. Case No. 5:17-cv-00062-LHK, filed the Declaration of Larry W. Lee in Support of Plaintiff's Opposition to Defendant's Motion for Decertification of the Meal Period Class (the "Aug. 16, 2018 Lee Declaration"). A true and correct copy of the Lee Declaration is attached as Exhibit 1 to the Request for Judicial Notice ("RJN") filed herewith.

The Lee Declaration includes wage statements from plaintiff Roderick Magadia showing that he, like Plaintiff Mays in this case, also received quarterly Incentive Awards

---

[1] See Jul. 30, 2018 Opp. at n. 6 ("Plaintiff also argues that 'a substantial percentage of terminated workers are paid bonuses, accrued overtime, days and weeks after their last day of work." . . To support the allegation, she cites to Exhibit 30 of the Mohan Declaration. (*Id.*) Exhibit 30 purports to be a newspaper article regarding Walmart's bonuses. (ECF No. 47 at 5). The article is not attached to the Mohan declaration. . ." Compare Jul. 8, 2018 Mohan Decl., Ex. 30 [ECF Doc. 47-4]. The Reuters article, doubtless derived from a Wal-Mart press release, is the sort of hearsay routinely used by experts.

during his employment with Defendant. The September 8, 2016 Wage Statement for Magadia shows that he received a MyShare Incentive Award of $96.66 and an associated adjustment of overtime wages in the amount of $0.33. These payments are coded "MYSHARE INCT" and "OVERTIME/INCT" on the wage statement, consistent with McChristian's testimony. RJN, Ex. 1 (Lee Declaration), at ECF p. 42 (Stokes Dep. Ex. 3), marked MAGADIA000041. Compare McChristian Decl. [ECF Doc. 56-1], ¶ 17 (MyShare Incentive Award and overtime adjustment coded as "MYSHARE INCT" and "OVERTIME/INCT" on employee wage statements).

Plaintiff Magadia's wage statement dated January 14, 2016 shows he received a MyShare Incentive Award in the amount of $2.30. RJN, Ex. 1 (Lee Declaration), at ECF p. 44 (Stokes Dep. Ex. 3), marked MAGADIA000001. Magadia's wage statement dated March 10, 2016 shows that he received a MyShare Incentive Award in the amount of $275.54 and an overtime adjustment in the amount of $0.84. RJN, Ex. 1 (Lee Declaration), at ECF p. 45 (Stokes Dep. Ex. 3), marked MAGADIA000005. Consistent with the post-termination Incentive Award payment Plaintiff Mays received on March 9, 2017, each of the above payments to Magadia were made on a Thursday.

In preparing his Declaration, Plaintiff's expert Moses and Plaintiff's counsel reviewed various Wal-Mart SEC filings. Jul. 8, 2018 Moses Decl. [ECF Doc. 46], ¶ 29. In the Wal-Mart Annual Report for 2015, covering the fiscal year ending in January 31, 2015, the Defendant wrote: "In addition to retirement-related benefits, in the U.S., the Company offers a broad range of Company-paid benefits to our associates, including store discount cards or Sam's Club memberships, bonuses based on Company performance, matching a portion of purchases through the Associate Stock Purchase Plan and life insurance. See RJN Ex. 2 (2015 Wal-Mart Annual Report) at 18. In its notes, Wal-Mart asserts that "[a]ccrued wages and benefits include accrued wages, salaries, vacation, bonuses and other incentive plans." Id. at 104.[2]

[2] Similar, if not identical, representations are made in Defendant's Annual Reports for its fiscal years ending each year thereafter. See Walmart, Inc. Annual Report (Form 10-K) (Mar. 30, 2016) at 14. (http://d1lge852tjjqow.cloudfront.net/CIK-0000104169/46c5c2e3-

The evidence described above shows that a substantial number of employees received MyShare Incentive, supporting numerosity.

This Court found that Plaintiff failed to establish commonality because:

> [T]he critical determination of whether the any late payments were for accrued *wages* that should have been paid immediately upon termination would require an individualized determination as to each class member.

Order [ECF Doc. 61] at 10: 12–15. The foregoing is incorrect with respect to the Incentive Awards and associated overtime payments, as it cannot be disputed but that a payment of a bonus and resulting overtime constitutes a wage payment. Accordingly, this Court's conclusion that "[i]t is highly unlikely that each class member would have received a late payment for the same reasons as Plaintiff or as any other class member, Order [ECF Doc. 61] at 10:12–27, overlooks the fact that many received the clearly-coded Incentive Awards ["MYSHARE INCT"] and associated overtime ["OVERTIME/INCT"].

Finally, of course, while there may a commonality issue with the first tardy payment, the February 23, 2017, post-termination payment to Mays, such "true-up" payments may be distinguished from the subsequent payment of the Incentive Award and overtime made post-termination to Plaintiff, typical of payments routinely made each quarter and received by thousands of current workers and hundreds of those who have been terminated. This Court highlighted the potential problem with the commonality issue in "true-up" payments:

---

666c-4865-b437-eb351ae5dbfe.pdf, last accessed Sept. 5, 2018) at 14 and 39, n. 1; ." Walmart, Inc. Annual Report (Form 10-K) (Mar. 31, 2017) at 26, 47, n. 1. (http://s2.q4cdn.com/056532643/files/doc_financials/2017/Annual/WMT_2017_AR-(1).pdf, last accessed Sept. 5, 2018); Walmart, Inc. Annual Report (Form 10-K) (Mar. 30, 2018) at 15 and 68, n. 1. (http://d18rn0p25nwr6d.cloudfront.net/CIK-0000104169/a25e7acb-aa07-49f3-8c0c-0c69e5a8d372.pdf, last accessed Sept. 5, 2018).

.

Indeed, Plaintiff allegedly received a late payment for work not actually performed, for an incentive or bonus that not all employees were eligible for, and for a stock purchase withholding refund not applicable to all employees. These are somewhat unique circumstances. Thus, even if it was determined that the payments *Plaintiff* received were for wages, this would not necessarily apply to each class member. Each payment would need to be scrutinized individually to determine whether it constituted a "wage" under California Labor Code section 201. For these reasons, it does not appear that the putative class members' claims "depend upon a common contention" where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 349-50.

Order [ECF Doc. 61] at 10:17–27.

It is respectfully submitted that this Court should reconsider its analysis of the commonality issue with respect to the post-termination payments of Incentive Awards and associated overtime. The McChristian testimony also supports Plaintiff's position that it is readily ascertainable which employees have received an Incentive Award because it is specifically coded on the wage statement as "MYSHARE INCT," with the retroactive adjustment to prior overtime paid in that quarter indicated by the code "OVERTIME/INCT." Jul. 30, 2018 McChristian Decl. [ECF Doc. 56-1], ¶ 17:21–23, *supra*. In fact, this Court found the proposed class to be ascertainable. Order, [ECF Doc. 61] at 6:22-7:4.

Plaintiff's proffered evidence shows that it is Wal-Mart's practice to issue an on-cycle wage statement to departing employees after the issuance of their Statement of Final Pay, at the end of the regularly scheduled pay period:

Q. Are you telling me that for all departing employees, that Wal-Mart issues an on-cycle final wage statement to all of them, even if it is a zero dollar

amount that they'd still be issued a final wage statement at the end of the pay period?

A. That is my understanding.

See Jul. 8, 2018 Mohan Decl., Ex. 35 (Stokes deposition) [ECF 47-6] at ECF. p. 87, p. 88:7–12.

The McChristian Declaration submitted by Defendant in opposition to the Motion also admits that departing employees regularly receive an "on-cycle" wage statement after they receive a Statement of Final Pay. See Jul. 30, 2018 McChristian Decl., [ECF Doc. 56-1] at ¶ 6. Further, although the McChristian Declaration states that associates do not typically "true-up" payments post-termination, she does not make a similar statement regarding post-termination payments of Incentive Awards and the resulting additional overtime payment. Instead, the McChristian declaration only claims that Plaintiff could not have received her Incentive Award at the time of her termination, "because it had not yet been determined which stores and associates would be receiving awards at that time." Id., ¶ 18:24–28. Whether or not Wal-Mart Stores, Inc. could in fact calculate this bonus payment for departing employees so that it could be provided to employees within the time limits set forth in sections 201 and 202 of the California Labor Code is a common question to be answered in a stroke for the members of the Former Employee Class.

## III. ARGUMENT

### A. An Order Denying Class Certification Is Subject To Reconsideration

An Order denying class certification is not a final judgment and thus is subject to reconsideration at any time. Federal Rule of Civil Procedure 54(b) ("any order . . . that adjudicates fewer than all claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all of the claims."). Central District Local Rule 7-18 authorizes reconsideration where there is (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party

moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

**B. Numerosity Was Established For The Former Employee Class**

It is undisputed that Plaintiff received two payments after her February 10, 2017 termination date. The payment received by Plaintiff on March 9, 2017 was for an Incentive Award, a clearly identifiable wage for a bonus, and the associated overtime wage, a payment which Defendant only claims could not have been paid to Plaintiff at the time of her termination. Plaintiff's point, however, is not that it was available for payment at the time of Plaintiff's termination, but that Wal-Mart delayed the payment beyond the date on which it could have been paid to the date regularly scheduled for the entire payroll run to all workers, every other Thursday. Plaintiff's Motion explains:

> For significant numbers of terminated workers, these bonus payments are unnecessarily late. The Defendant always delays such payments until a regularly scheduled Thursday payroll day, ignoring California requirements for prompt payment of all final wages. It is improper to delay payment of wages for the sole purposes of addressing employer concerns for economy. Peabody v. Time Warner Cable, Inc., 59 Cal. 4th 662. 667 (2014).

Motion [ECF Doc. 43] at 17:20–25.

Although the Court found that "Plaintiff fails to point to any information regarding the bonus criteria or how many employees qualified for a bonus in a given pay period, etcetera," Order [ECF Doc. 61] at 8, Plaintiff submitted evidence showing that tens of thousands of employees were eligible for and received quarterly Incentive Awards, and hundreds of them had been terminated when the payments were made. Plaintiff also provided evidence showing that Defendant's wage statements themselves identified when these payments were made. Jul. 30, 2018 McChristian Decl. [ECF Doc. 56-1], ¶ 17:21–23. Exhibit 30 to the Jul. 8, 2018 Mohan Declaration [ECF Doc. 47-4] at ECF p. 44,

indicates that Defendant paid quarterly bonuses to at least 932,000 store employees in 2016, quarterly bonuses to 880,000 employees in the second quarter of the fiscal year in 2016 and to 687,000 workers in the fiscal year in 2015. Id. at ECF p. 44.

The testimony of Defendant's Regional HR Director, Todd Stokes, states that just in California 51,824 employees received a MyShare Incentive Award in the same period they were paid one or more meal premiums during the time period December 2, 2012 to September, 2017. Jul. 8, 2018 Mohan Decl., Ex. 35 (Stokes deposition) [ECF 47-6] at ECF. p. 89, p. 93:1–18. There are undoubtedly more than fifty-one thousand people who received an Incentive Award if the receipt of a meal premium is not taken into account. This information supports a finding of numerosity, information appropriate for Moses to review and rely upon in forming his conclusion "the numbers of employees involved in the proposed . . . Former Employee Subclass are in excess of fifty." Jul. 8, 2018 Moses Decl., [ECF Doc. 46] at 13:16–17. See Luviano v. Multi Cable, Inc., 2017 WL 3017195, *12 (C.D. Cal. Jan. 3, 2017) quoting Orantes –Hernandez v. Smith, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.") Because the Court did not consider that the Moses conclusion was based on far more than Plaintiff's experience, the matter should be reconsidered and the Motion granted.

**C. Commonality Was Established For The Former Employee Class**

The Court found that Plaintiff did not establish commonality because payments to class members would have to be individually examined to determine whether or not they constituted a "wage." However, whether or not the Incentive Award bonus and associated overtime is a wage is a single common question that may be readily determined on behalf of all members of the Former Employee Class. Of course, there can be no dispute but that it is a wage:

> A bonus is a wage. Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 24 Cal. App. 3d 35, 44 (1972), aff'd, 414 U.S. 117 (1973). Incentive

    compensation, such as bonuses and profit-sharing plans, also constitute wages. Schachter v. Citigroup, Inc., 47 Cal. 4th 610, 618 (2009).

Motion [ECF Doc. 43] at 17: 15-20. Further, as explained above, Plaintiff supplied evidence showing that the Defendant's wage statements themselves easily identify whenever such a payment is made. Secondly, whether or not the payment was timely paid is also a question common to the class. Plaintiff's unchallenged expert testimony concluded that in light of the fact that the payments are always made on the regularly scheduled payday that:

"Defendant intentionally and routinely delayed the payments of bonuses, including the final bonus to Plaintiff and thousands of others who have terminated their service for the Defendant during the period from December 18, 2014 to date, and received their non-discretionary bonus a month or more after the close of the relevant quarter, delayed to a day which would coincide with its regular, corporate payroll runs. Whether this delay in payment of final wages is a practice that is legal under California law is a common questions which a court may address and decide for all California workers who have received a bonus payment after their final day of work for the Defendant.

Jul. 8, 2018 Moses Decl. [ECF Doc. 46], at 8:11–19.

Because this evidence was not considered in denying Class Certification, Plaintiff respectfully submits that the Court should reconsider its Order and grant Plaintiff's Motion. The class should be limited to those who received a bonus Incentive Award payment after termination, excluding those who only or also, like Plaintiff, received a "true-up" payment in the pay period immediately after termination.

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Reconsideration and grant Plaintiff's Motion for Class Certification as to the Former Employee Class.

DATED: September 5, 2018

HARRIS & RUBLE

*/s/ Alan Harris*

Alan Harris
*Attorneys for Plaintiff*